My goodness, we're coming to the last case of the day, and that is Appeal No. 22, 1820, Rene Martinez v. Kilolo Kijakazi, and Ms. Fischer will wait for Ms. Fischer. Good morning, Your Honors. May it please the Court? My name is Jennifer Fischer, and I represent the plaintiff, Rene Martinez. This case is about legal error. The LJA made a series of legal errors in deciding Mr. Martinez's claim for supplemental security income benefits, and Social Security's Appeals Council compounded those errors when it failed to produce a complete transcript and administrative record, which was necessary to permit the District Court to engage in meaningful judicial review of the Commissioner's denial of benefits. It's important to understand that this case is not a case where historical facts were unclear or materially disputed. Mr. Martinez is a man who was over 50 at the time he filed his application for SSI in November of 2017. He had little work history. He had not earned more than a few hundred dollars in any months since he had filed for benefits. He was diagnosed with and treated for COPD and asthma, depression, and anxiety, among other medically determinable impairments. He went to the doctors and he underwent treatment, the treatments that his doctors recommended. The only real dispute is whether Mr. Martinez's medical conditions caused the functional limitations that prevented him from working at a substantially gainful level, that is, whether he was disabled as defined in the Social Security Act. That is a legal question. Could you please address the ALJ's point that the doctors, uh, Pansner, did not tie what they believed to be Mr. Martinez's, Mr. Martinez's psychiatric limitations to specific functional limitations? Yes. The ALJ, okay, that's part of my legal error point, is when the ALJ discussed that medical opinion, which was a joint opinion offered by, um, two doctors whose last name is Pansner, a psychologist and a psychiatrist who worked together to treat, um, Mr. Martinez, uh, the ALJ talked about a number of factors that led her to conclude that the opinion was not, um, persuasive and, uh, not supported. But the regulations say that the most important things to look at when evaluating a medical opinion are consistency and supportability. And so going back to your question, what the ALJ did was she decided that the opinion wasn't consistent with her findings about Mr. Martinez and his disability. So she went in then and she said, well, I don't like the language that was used in this case. It's not specific to functioning. But in fact, it was in some respects consistent with functioning. Let me flip over here to the, to the, uh, the opinion. And, um, so for example, they gave specific examples about his ability to maintain attention. They gave examples about anxiety. Um, they gave examples about, um, his ability to maintain employment. And that turns out to be one of the main factors that prevent people from being able to work is whether or not they can make it to work every day. And that comes out in the vocational testimony is if you miss a day or two of work every month, most employers won't keep you around. So when they talk about those specific work-related functions, maybe it's not how much he can lift or whether he can sustain attention for two hours, but being able to make it to work every day turns out to be a really important work-related function. And that is addressed in their opinion. And so that's a legal error that the ALJ committed because instead of looking at consistency, supportability, she looked at factors that were not pertinent under the regulation. And then instead of taking into account the actual functional limitations, she essentially nitpicked the way they were set forth. So she said, I don't like the way the doctor described these limitations, so I'm not going to consider them, but that's because the regulations don't say you can disregard a functional limitation if you don't like the way the doctor described it. What the regulations do say or give the ALJ the discretion to do is if the ALJ doesn't think that it's a particularly relevant way of describing it, the ALJ can contact the doctor and ask for clarification. The regulations provide for that. And that makes a lot of sense that if it's not useful, then get clarification. And she didn't do that either. Instead, she just said no. And she didn't use the right rules to do that. And so that is legal error. And the government, in response, has asked the district court and asked this court to ignore the legal error and instead say there's a scintilla of evidence that supports her factual findings because she said a few things that are arguably factually true about his opinion, the opinion about his functioning. And under a substantial evidence review, you'd have to give that finding a lot of deference. But if you review for legal error, you don't have to give that deference because if you review for legal error, then you look at whether or not the ALJ followed the rule. That is not entitled to deference. If you review for substantial evidence, then you have to look at whether or not the ALJ followed the rule, only to see if there's a scintilla of evidence supporting a factual finding. There's not a question here about whether or not Mr. Martinez saw the doctors in question, whether or not their findings are supported by treatment. No one is saying that they didn't treat him. No one is saying that the treatment wasn't appropriate. No one is saying he lied to them about his symptoms. So those are not factual issues that needed to be resolved. The issue is whether the ALJ followed the rules in evaluating their opinion. And we are saying she did not follow the rules and we're asking you to insist that she does. Likewise, we're asking you to insist that the case be decided only based on Mr. Martinez's records because the ALJ said that she carefully reviewed the case and made a decision after finding that Mr. Martinez made a series of inconsistent statements about his symptoms and limitations, which is within her purview. She can find that he made inconsistent statements, but if she's going to do that, again, she needs to follow the rules, which she did not do. Ms. Fisher, have you ever seen B-15-F? I think that's the exhibit. The exhibit? I have not. Okay. So throughout the, I know it's not in the record and I know you didn't have a copy of it, but did you ever see it through the course? I have never seen it. I don't know what was in it, other than as it was described in the ALJ's decision. Did Ms. Martinez ever see it, to your knowledge? I don't believe he ever saw it. I don't know. You don't know if he did or not? I just don't know. What I do know is that the ALJ described nine pages of records in one sentence. Now, we often say ALJs don't have to describe every piece of evidence in the decision, so it's not unreasonable to assume there's more in that evidence than was described in the decision. We just don't know what was in there and that's the problem because she said that she didn't believe everything he said because his statements were inconsistent. And then she said, here's what this doctor said about his treatment and here's what his statement was inconsistent. That's not what happened to him. So what he said about it is not going to match. Yeah, that's inconsistent. So how can that be harmless error? That's not harmless. You can't have your case decided on somebody else's records and have that be harmless. It's mind-blowing to me, honestly, that it has come this far. But it's not unusual, frankly, for other people's evidence to be incorporated into an administrative record and that's why the Social Security Administration has rules about what to do in that situation. Unfortunately, the rules were not followed in this case. I don't know why, but they weren't. So what we're asking, again, is just to have Social Security follow their own rules, take the evidence out, and give Mr. Martinez a full and fair hearing based on the evidence in his case. Okay. And I think that's all I have to say. Yeah, I will give you some rebuttal time, but you, yeah. Thank you. Thank you. All right. Mr. Hensley? Hi, Mr. Hensley. Good afternoon, Your Honors. May I please the Court? I'm Jay Hensley and I represent the Acting Commissioner in this case. May I start you out, please, because with respect to the joint opinion of the Doctors Panzer, even if we set aside the portion of their opinion addressing non-psychiatric issues, it seems to me that they identified substantial concerns about Mr. Martinez's ability to hold the job in view of his mental health conditions. Yet, the way I saw it is that the ALJ brushed that off altogether. I take her point that they did not attempt to identify specific functional limitations resulting from his psychiatric difficulties. But aren't the limitations obvious, particularly when we combine their opinion with the pessimism that Dr. Pradina herself expressed about Mr. Martinez's job prospects? Your Honor, with regard to both Doctors Panzer and Dr. Pradina, functional limitations, quite frankly, are what the ALJ has to work with. If there are no functional limitations expressed, specific functional limitations, then there is, quite frankly, nothing to incorporate into a residual functional capacity assessment and a corresponding hypothetical to the VE. Here, not only do we have an absence of actual functional limitations with regard to Doctors Panzer, there's also a great sparsity of evidence supporting mental limitations. I would like to point out to the Court that number nine is not only associated with the pages from another claimant. The number nine also is associated with the total number of pages in this record showing mental health treatment. They're spread out between Exhibits 3F, 12F, and 15F, but they amount to nine pages of mental health treatment, none of which speak to significantly abnormal mental findings. They're mostly speaking towards medication adjustments. They're just treatment notes that are, quite frankly, not particularly significant. The ALJ noted this. They appropriately noted the doctor's opinions were inconsistent with the evidentiary record, including the findings of Dr. Pradina. Going to Dr. Pradina, again, the observations from Dr. Pradina were general. Dr. Pradina said that Mr. Martinez's ability to sustain concentration and persistence appeared to be impaired. He would likely have some problems and would likely struggle to get along with supervisors and co-workers. Dr. Pradina also expressed the opinion that he would retain the ability to go back and perform some of the past work that he had done in the past. I have to tell you, I'm trying very hard to have an open mind, but I felt that the ALJ used this consistency terminology so frequently. Throughout her opinion that it gave rise to questions as to whether she really understood what Mr. Martinez's burden was in claiming to be disabled and whether she was simply saying that certain of his alleged limitations were not credible in view of the objective medical evidence or she was saying more broadly, okay, that he was not credible as a claimant or that his overall case was not credible. And when she kept using, she keeps using these phrases like not entirely consistent or entirely consistent, it really started to make me wonder whether she was holding him to an inappropriately demanding burden of credibility. And I mean, I thought, I mean, I really have some concerns about oversights on her part. Your Honor, I'm sorry. The ALJ's use of the word inconsistent, I really don't take it to mean incredible, lacking credibility. I think she was giving a fair assessment of whether his statements of disability were supported by the overall evidence of record, not just the objective evidence, but the overall evidence of the record, his daily activities, the type of treatment he received, his improvement with treatment. But that raises another problem. I'm concerned about the missing documents, B15F. And I agree with you that she said this was consistent or inconsistent with the overall record. How can we even review it when she relied on an exhibit that isn't in the record that reflects medical records of somebody else? That's a fair concern, Your Honor. My response to that is that if you look at her very little references to this. I did look at this, and I know you said too, I counted seven references to B15F. And I include in there references where she says, talks about what those documents reflect or don't reflect. The medical records do not show that his claims of headaches and other things significantly impaired the sustained work function. How could we make that determination without knowing what's in those records? So, in other words, if she's relying on records of another claimant whose conditions are not as severe as Mr. Martinez's, I think even you would agree that's error. I think what we need to look at is why, for what purpose did the ALJ look at these records? It was for two reasons. One, does Mr. Martinez or does he not have additional severe impairments that I, the ALJ, need to consider? And two, is there evidence in these additional records that I admittedly should not be looking at, but they're in front of me and I'm just not realizing that they're someone else's. Does this show additional functional limitations that I need to incorporate? But how can you say that? Because I don't think it's clear from the record that she was looking at the records to see if there were any additional limitations. Some of this could be interpreted that because the records reflect, don't reflect the severity that is before the court on Mr. Martinez, that she's discrediting what he has said. I really don't think that's the case, Your Honor. But how can we decide that, given that we don't have the records? If I may, and I, in my head, I came up with three hypotheticals that I think would be very different. If the ALJ had referred to something prejudicial to Mr. Martinez, this is the first one, in connection with this other individual's records. Like say, for example, she said that Dr. So-and-so mentioned that he'd recently been walking a lot or rock climbing or bowling or something like that. There's nothing like that in there. Secondly, if the ALJ relied on the other claimant's records to show significant improvement in Mr. Martinez's condition. Well, isn't that first example that I gave just the flip of that? Because she relies or she cites the record to say that the medical records do not show that Martinez's claims of headaches, and then she gives a list of his claims, significantly impair or limit the sustained work function. But these are speaking to impairments that Mr. Martinez does not even claim to have. The case is cited by Mr. Martinez in the reply brief, Hill and Hargrove. Hill, I'll give a Westlaw site on that. It's 2021 Westlaw 2430938. In that case, the ALJ meaningfully relied upon another patient's records to conclude that the limitations attributable to plaintiff's mental health symptoms were not as severe as alleged. In that case, the district court actually noted that the erroneous records actually weakened support for the ALJ's non-disability finding, and the court was unable to discern whether the same conclusion would have been reached. I don't think that's the case here. The ALJ was trying to determine. How can we decide though without seeing what's in the records? She made a determination that these records don't support the severity of what he's claiming. I would rely on what the district court in this case did. But the district court didn't see the records either. It didn't. The district court noted correctly that had it been different, had he been given credit if you will for an additional impairment, he only would have stood to benefit. He would have had additional limitations that would have had to have been incorporated into the residual. But if he has limitations and the records were relied on for the fact that he doesn't, how is that not error? If he has these impairments and the ALJ discounted them because of what's in the records of another claimant, how is that not error? Because here the records from the other claimant pertain to impairments that Mr. Martinez doesn't even claim to have. And there's no error. I think we're in Alice in Wonderland. I really do. Look, the ALJ was contrasting findings of this Dr. Goble and this other claimant with those of an agency consultant, Dr. Parker. I mean, I'm sorry, but that's it. The bottom line here, and I know I'm well past my time. No, no, just, you know. Let me just close. I would say that if substantial evidence supports the ALJ's decision, then whether any of us would have done things differently is not relevant. But my point is, how do we know if substantial evidence supports her decision when we don't know what some of that evidence is that she cited seven different times in her opinion? And again, Your Honor, I would just say that because these are chiropractic records and Mr. Martinez's impairments have nothing to do with chiropractic. Now, the best case scenario— You'd be surprised at what chiropractors treat, actually. But his impairments are COPD and asthma, obesity, mental impairments. And I realize I'm taking up the Court's time, but I appreciate your time. No, no, no. Are you done? Yes, I guess. Is there anything you really wanted to add? I'll give you a minute. I believe I've said everything. Okay. I appreciate it. No, thank you. Okay. Ms. Fisher? I'm going to give you two minutes. Thank you. I will just briefly address the point about the brevity of treatment records. It's important. Mr. Martinez had an SSI claim, which means they only started looking at his treatment records around the time he filed this application. There's a note that says he had been treating with both of the doctors, Pantzner, beginning in 2015. There's also some evidence showing that he had filed previous applications. So I think that looking just at—and the SSI application itself indicates that he probably didn't have a lot of financial means. So I think there's a lot of reasons besides, oh, his mental health wasn't that bad that could explain not a lot of records. And in any event, he did get regular and ongoing mental health treatment. All of the doctors who saw him believed he had very serious mental health conditions. The ALJ found he had mental health conditions that were serious, caused work-related limitations. I mean, I don't think that that is an issue that is really—there's any real question about whether or not his mental health conditions were serious. I think that to the extent the ALJ raises that, it's not—it's kind of a laundry list sort of issue. What I would like to devote more of my time to is an issue that you raised, Your Honor, and that is the ALJ's seemingly confounding of this credibility analysis or this inconsistency of statements with Mr. Martinez's burden of proof. There's a burden of proof, the preponderance of the evidence that's required to find a person disabled. That's different than this consistency of statements that they look for to credit what a person says about their own symptoms and limitations. There's different regulatory schemes for evaluating symptoms and limitations as opposed to the overall finding of disability. There's a lot more leeway and discretion than an ALJ has in evaluating subjective statements about your symptoms and limitations, and that makes a lot of sense. But when it comes to the overall legal conclusion about whether or not somebody is disabled, that is a legal finding that has to be based on a preponderance of the evidence. And as you pointed out, in this case, it looks like the ALJ kind of strayed from that finding, that legal finding based on a preponderance of the evidence, to it's consistent, it's not consistent, and just used that as kind of a proxy in a way that's not consistent with the rules. And again, all we're really asking for at the end of the day is for Social Security to follow their own rules, to look at evidence that it only belongs to Mr. Martinez, to consider the medical opinions under the rules, and to base the decision on a preponderance of the evidence under the rules. And if there are no other questions, thank you very much. We ask that you remand this case. Thank you very much. Case will be taken under advisement. Thank you.